IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

J.M.V.,[1]

        Plaintiff,

v.

Case No. 18-1202-JWB

NANCY A. BERRYHILL,
*Acting Commissioner of Social Security,*

        Defendant.

**MEMORANDUM AND ORDER**

Plaintiff filed this action for review of a final decision of the Commissioner of Social Security denying Plaintiff's application for social security disability benefits. The matter is fully briefed by the parties. (Docs. 15, 16, 19.) The Commissioner's decision is REVERSED and REMANDED for the reasons stated herein.

**I. Standard of Review**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The Commissioner's decision will be reviewed to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence as a reasonable mind might accept as adequate to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

---

[1] Plaintiff's initials are used to protect privacy interests.

Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. *Graham v. Sullivan*, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. *Glenn*, 21 F.3d at 984.

The Commissioner has established a five-step sequential evaluation process to determine disability. 20 C.F.R. § 404.1520; *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010). If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). At step two, the agency will find non-disability unless the claimant shows that he or she has a severe impairment. At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. *Id.* at 750-51. If the claimant's impairment does not meet or equal a listed impairment, the agency determines the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e). The RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. § 404.1520(a)(4); § 404.1520(f), (g). At step four, the agency must determine whether the claimant can perform previous work. If a claimant shows that she cannot perform the previous work, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is

capable of performing other jobs existing in significant numbers in the national economy. *Barnhart v. Thomas*, 540 U.S. 20, 25 (2003).

The claimant bears the burden of proof through step four of the analysis. *Blea v. Barnhart*, 466 F.3d 903, 907 (10th Cir. 2006). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. *Id.*; *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. *Thompson*, 987 F.2d at 1487.

**II. Background and Procedural History**

Plaintiff applied for disability insurance benefits and supplemental security income, alleging a disability beginning December 4, 2014, when she was 39 years of age. (Tr. at 18, 257.) Prior to that time, Plaintiff held jobs as a customer service representative, freight manager, and healthcare resident assistant. (Tr. at 337.)

Plaintiff's claims were administratively denied both initially and upon reconsideration, prompting her to request a hearing before an Administrative Law Judge (ALJ). Plaintiff appeared and testified at a hearing in Wichita on August 16, 2017, before ALJ Susan Toth. Plaintiff's daughter and vocational expert Kristine Skahan also testified. On January 17, 2018, the ALJ issued a written decision unfavorable to Plaintiff. (Tr. at 18-34.)

At step one, the ALJ found Plaintiff had not been engaged in substantial gainful activity since the alleged onset date of December 4, 2014. (Tr. at 21.) At step two, the ALJ found Plaintiff suffered from the following severe impairments: migraine headaches, major depressive disorder, generalized anxiety disorder with social anxiety features, lumbar degenerative disc disease, bilateral chondromalacia patellofemoral syndrome, left knee synovial cyst, right shoulder impingement with osteoarthritis, right-side paresthesia, and left shoulder pain. (*Id.*) The ALJ also

found Plaintiff had undergone treatment for hypertension, hypothyroidism, hepatic steatosis, mild (symptomatic) lymphocytosis and a renal calculus, but found these impairments were not severe. (*Id.*) The ALJ noted Plaintiff also reported having multiple sclerosis (MS), carpal tunnel syndrome, peripheral artery disease, pancreatitis, and irritable bowel disease, but the ALJ concluded there was "no evidence in the record, including documented physical symptoms, functional limitations, [or] diagnostic findings or techniques, which would demonstrate the existence of these conditions," such that the conditions were not medically determinable. (*Id.* at 22.) At step three, the ALJ found that none of Plaintiff's impairments, alone or in combination, met or exceeded any impairment listed in the regulations. (*Id.* at 23.)

The ALJ next determined that Plaintiff has the RFC to perform sedentary work, as defined in the regulations, in that she can lift, carry, push and/or pull 10 pounds occasionally and less then 10 pounds frequently; can stand and walk in combination for 2 hours in an 8-hour workday; can sit for a total of 6 hours in an 8-hour workday; can occasionally climb ramps and stairs; may not climb ladders, ropes, or scaffolds; can occasionally stoop, kneel, crouch, and crawl; can have no more than occasional exposure to extreme cold and heat; cannot be exposed to hazards including unprotected heights and machinery with moving parts; can understand, remember, and carry out simple instructions and maintain concentration, persistence, and pace for simple, routine, and repetitive tasks; can occasionally interact with the general public; and can adapt to changes in the work setting consistent with the foregoing limitations. (*Id.* at 24-25.)

In determining Plaintiff's RFC, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause her symptoms, but Plaintiff's statements as to the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the medical and other evidence. (Tr. at 26.) The ALJ noted Plaintiff had sought treatment for

migraine headaches and back, shoulder, and knee pain, but found the treatment records and objective evidence did not support debilitating limitations. The ALJ reviewed medical and other evidence pertaining to Plaintiff's symptoms. The ALJ gave partial weight to the opinions of T.A. Moeller, Ph.D., who performed a consultative psychological exam, and who diagnosed Plaintiff with mild major depressive disorder and a possible somatoform disorder. Dr. Moeller opined that Plaintiff's mental impairment, standing alone, would not prevent her from working. (Tr. at 30; 474.) The ALJ also gave partial weight to the opinion of David Simmonds, Ph.D., who performed a second consultative psychological exam, and who diagnosed Plaintiff with moderate and recurrent major depressive disorder and generalized anxiety disorder with social anxiety features. (Tr. at 620.) The ALJ considered the opinions of two state agency psychological consultants, E. Bergman-Harms, Ph.D. and Carol L. Adams, Psy.D., and gave greater weight to the latter's opinions that Plaintiff could understand, remember, and carry out simple instructions; could maintain concentration, persistence, and pace for simple, routine and repetitive tasks; could occasionally interact with the public; and retained the ability to adapt to change. (Tr. at 32.) The ALJ also considered but gave little weight to the opinion of a consultative medical examiner, Gary W. Coleman, M.D., who opined that Plaintiff would have no exertional limitations but would have postural and environmental restrictions. The ALJ agreed with the postural and environmental restrictions but found Plaintiff would also have exertional imitations. (*Id.*) The ALJ additionally considered evidence of Plaintiff's activities of daily living and third-party statements by Plaintiff's husband and daughter.

At step four, the ALJ found that Plaintiff was unable to perform any of her past relevant work. (Tr. at 32.) Finally, at step five, the ALJ found that given Plaintiff's age, education, work experience, and RFC, there were three sedentary jobs in the national economy in significant

numbers that she could perform, including Document Preparer (DOT 249.587-018), Administrative Support Worker (DOT 209.587-010), and Circuit Board Assembler (DOT 726.684-110). (Tr. at 33.)

**III. Analysis**

1. *Fibromyalgia.* Plaintiff first contends "remand is necessary for the Commissioner to determine whether fibromyalgia and/or chronic pain syndrome are medically determinable impairments and, if so, to include those impairments in [the] consideration and analysis" of the remaining steps. (Doc. 15 at 12.) Plaintiff points out that Sarab Alseouidi, M.D., recommended "consider[ing] pain management for fibromyalgia" after a January 8, 2016, examination of Plaintiff (Tr. at 542). Joshue Tibbe, M.D., questioned whether Plaintiff's shoulder pain was due to fibromyalgia after an examination on February 3, 2016 (Tr. at 602). Xavier Ng, M.D., assessed Plaintiff after an office visit on March 22, 2016, as having fibromyalgia (Tr. at 630). And David Simmonds, Ph.D., following a mental status examination of Plaintiff on February 26, 2016, assessed Plaintiff on Axis III as having fibromyalgia, hypertension, and migraine headaches, and found a somatoform disorder was unlikely because Plaintiff "seems to have enough medical involvement that her fibromyalgia is likely a valid diagnosis." (Tr. at 621.) Despite these findings, the ALJ's opinion did not mention fibromyalgia or consider the above assessments in analyzing Plaintiff's claim.

The Commissioner argues "[i]t is not enough for Plaintiff to show that the ALJ made a mistake by not identifying certain diagnoses at step two." (Doc. 16 at 5.) Rather, Plaintiff "must show that … the ALJ also did not consider the various clinical findings and limitations associated with the allegedly missing impairment when formulating the RFC." (*Id.*) The Commissioner

maintains that "[o]nly if that evidence is not a part of the RFC evaluation would there be a basis for remand." (*Id.*)

The ALJ's failure to address fibromyalgia was clearly harmless insofar as step two of the sequential process is concerned. The regulations require a claimant to show only one severe impairment to avoid denial of benefits at step two. *Allman v. Colvin,* 813 F.3d 1326, 1330 (10th Cir. 2016). "Thus, the failure to find a particular ailment severe at step two is not reversible error when the ALJ finds that at least one other impairment is severe." *Id.* At step two the ALJ found Plaintiff had several severe impairments and proceeded to step three, so any error at step two was in fact harmless. The failure may also have been harmless at step three, given that Plaintiff has not identified (or even alluded to) any listed impairment to which Plaintiff's fibromyalgia was medically equal.[2] But the court cannot say the failure was harmless with respect to the determination of Plaintiff's RFC and the remaining sequential steps.

Two factors warrant special caution when applying the harmless error doctrine in social security disability cases. *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). First, courts must avoid usurping the Commissioner's responsibility to find the facts of a case. Second, "to the extent a harmless-error determination rests on legal or evidentiary matters not considered by the ALJ, it risks violating the general rule against post hoc justification of administrative action …." *Id.* As indicated below, both of those factors are implicated here.

---

[2] At step three, an ALJ must determine whether any severe impairment meets or medically equals a condition in the Listing of Impairments, 20 C.F.R. part 404, subpart P, appendix 1. Fibromyalgia is not a listed impairment, but an ALJ must still determine "whether [fibromyalgia] medically equals a listing (for example, listing 14.09D in the listing for inflammatory arthritis), or whether it medically equals a listing in combination with at least one other medically determinable impairment." SSR 12-2P, 2012 WL 3104869 (July 25, 2012).

All medically determinable impairments, including non-severe impairments, must be taken into account in determining a claimant's RFC. *Mushero v. Astrue,* 384 F. App'x 693, 2010 WL 2530728 (2010); 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' … when we assess your residual functional capacity.") The ALJ did not determine whether Plaintiff had a medically determinable impairment of fibromyalgia, although Plaintiff alleged that fibromyalgia was one of the medical conditions that limited her ability to work, and more than one physician diagnosed her with the condition.[3] (R. at 296.) The ALJ thus did not apply the correct legal standard. There are no findings in the ALJ's opinion acknowledging or examining the physician opinions concerning fibromyalgia. *See* 20 C.F.R. § 404.1527(c) ("Regardless of its source, we will evaluate every medical opinion we receive.") Nor did the ALJ mention or cite to SSR 12-2P, 2012 WL 3104869 (July 25, 2012), which is the Social Security Administration's rule for evaluating fibromyalgia in disability claims. That rule contains a detailed test for determining whether a person has an impairment of fibromyalgia and for considering fibromyalgia in the sequential evaluation process. The rule notes among other things that in determining the RFC, the ALJ must "consider a longitudinal record whenever possible because the symptoms of FM [fibromyalgia] can wax and wane so that a person may have 'bad days and good days.'" *Id.*, 2012 WL 3104869, at *6. It additionally notes that "[w]idespread pain and other symptoms associated with FM, such as fatigue, may result in exertional limitations that prevent a person from doing the full range of unskilled work in one or more of the exertional

---

[3] Plaintiff argues she has a medically determinable impairment of fibromyalgia under the criteria in section (2)(B) of SSR 12-2P, 2012 WL 3104869 (July 25, 2012). Whether Plaintiff has in fact satisfied those criteria is a matter for the ALJ to determine in the first instance.

8

categories" and that "[p]eople with FM may also have nonexertional or mental limitations because of their pain or other symptoms." *Id.*

The Commissioner argues the failure to consider fibromyalgia was nevertheless harmless because the ALJ "considered all of the functional limitations in the record, regardless of the condition that was the source of those limitations." (Doc. 16 at 5.) But the court cannot say that the undiscussed evidence and diagnoses pertaining to fibromyalgia could not possibly have affected the ALJ's conclusions about the severity of Plaintiff's symptoms, including pain, and their limiting effects. *Cf. Allen,* 357 F.3d at 1145 (it "may be appropriate to supply a missing dispositive finding under the rubric of harmless error in the right exceptional circumstance, i.e., where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way"). To reach that conclusion here would require "mere speculation regarding the ALJ's analysis." *Elliot v. Astrue,* 507 F.Supp.2d 1188, 1195 (D. Kan. 2007) (remanding for ALJ to determine whether fibromyalgia was medically determinable impairment and, if so, to take it into account.) The ALJ failed to consider that several physicians diagnosed Plaintiff with fibromyalgia and attributed some of her symptoms to it. Yet according to SSR 12-2P, "[w]hen a person alleges FM, longitudinal records reflecting ongoing medical evaluation and treatment from acceptable medical sources are especially helpful in establishing both the existence and severity of the impairment." *Id.*, 2012 WL 3104869, *3. Moreover, according to SSR 12-2P the symptoms of fibromyalgia can "wax and wane," resulting in "good days and bad days," and can cause widespread pain or fatigue that necessitates nonexertional or mental limitations. *Id.*, 2012 WL 3104869, at *6. Plaintiff testified before the ALJ that she was frequently in pain and fatigued, that she had difficulty sleeping or standing for any extended period due to pain, that she

could not lift objects with her right arm due to pain, that the frequent fatigue made her depressed, and that the combination of migraine headaches made her condition debilitating. (See R. at 48-56.) The application of the standards in SSR 12-2P could conceivably alter the ALJ's conclusions about the severity of Plaintiff's impairments and her resulting limitations, or the weight the ALJ chooses to attach to Claimant's testimony or to medical or non-medical opinions. *See e.g.,* R. at 31 (ALJ finding that "[a]lthough the claimant alleges that she must lie down much of the day, the undersigned is unable to attribute this limitation to the claimant's impairments given the limited objective medical and examination findings."). *Cf. Gilbert v. Astrue,* 231 F. App'x 778, 784 (10th Cir. 2007) (noting that a lack of objective test findings is not determinative of the severity of fibromyalgia; remanding for ALJ to address claimant's fibromyalgia because it might impact the weight assigned to medical opinions.)

In sum, although the ALJ considered Plaintiff's symptoms, including pain, in formulating the RFC, the court cannot find that the failure to consider fibromyalgia was harmless. If such an impairment is medically determinable, it could impact the ALJ's assessment of Plaintiff's limitations. *See Mushero v. Astrue,* 384 F. App'x 693, 695 (10th Cir. 2010) ("While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may – when considered with limitations or restrictions due to other impairments – be critical to the outcome of a claim.") (quoting SSR 96-8P, 1996 WL 374184, at *5 (July 2, 1996)).

Because this issue requires a remand for the ALJ to consider the evidence concerning fibromyalgia and its impact on Plaintiff's claim, the court need not address Plaintiff's remaining arguments. The ALJ is free on remand to reopen the hearing, if necessary, and to reconsider any issues as appropriate in light of the ALJ's consideration of this evidence. Nothing in the court's opinion is intended to suggest any particular outcome on Plaintiff's application.

**IV. Conclusion**

The Commissioner's decision is REVERSED and REMANDED. The case is remanded pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings in accordance with this Memorandum and Order.

IT IS SO ORDERED this 5th day of June, 2019.

\_\_\_\_\_s/ John W. Broomes_____
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE